UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:17-CV-80908-ROSENBERG

DEBORAH C. MENOTTE, Trustee in
Bankruptcy for Ernesto T. Baez,

    Appellant,

v.

ERNESTO T. BAEZ,

    Appellee.
_____/

## OPINION AND ORDER

THIS CAUSE is before the Court on the Initial Brief of Appellant, Deborah C. Menotte [DE 10]. The Court has carefully considered the parties' briefs and the entire record on appeal and is otherwise fully advised in the premises. For the reasons set forth below, the Bankruptcy Court's Order Overruling Trustee's Objection to Homestead Exemption and Denying Application for Turnover is AFFIRMED and Appellant's appeal is DENIED.

### I.     BACKGROUND

On February 7, 2017, Appellee Ernesto T. Baez filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code. *See* DE 5-3 at 1–55. On Schedule C of his Voluntary Petition, Appellee claimed real property located at 4149 Kirk Road in Lake Worth, Florida as exempt homestead property. *See id.* at 16. That property consists of 0.56 acres in unincorporated Palm Beach County. *See id.* at 60–66. There are two buildings on the property, one of which is Appellee's residence; the other contains a 1,500-square-foot apartment that Appellee rents out for $600 per month. *See id.* at 61; DE 6, Hrg. Tr. 3:25–4:4.

On June 1, 2017, Appellant Deborah C. Menotte, Trustee in Bankruptcy for Ernesto T. Baez, filed her Objection to Claimed Exemptions and Application for Turnover, objecting to the claimed homestead exemption because Appellee does not use the entire property as his residence. *See* DE 5-3 at 56–59. On July 19, 2017, the Bankruptcy Court held a hearing on the Objection. *See* DE 6. The following day, the Bankruptcy Court entered an Order Overruling Trustee's Objection to Homestead Exemption and Denying Application for Turnover, concluding that Appellee is entitled to claim the entire property as his homestead despite the fact that he leases part of the property to another. *See* DE 5-3 at 73–74. That Order is the subject of this appeal.

## II. DISCUSSION

The Court begins with the text of article X, section 4 of the Florida Constitution, which provides in relevant part as follows:

> (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:
>
> (1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or the owner's family . . . .

At issue is whether the Bankruptcy Court correctly interpreted article X, section 4 when it concluded that the language limiting Florida's homestead exemption "to the residence of the owner or the owner's family" does not apply to properties located outside a municipality. In other words, while it is clear that, with respect to properties located within a municipality, the homestead exemption is limited to the portion of the property actually used as residence of

2

the owner or the owner's family, the Court must determine, with respect to properties located outside a municipality, whether an individual may claim the entire property as exempt where a portion of that property is not used as the residence of the owner or the owner's family. This is a question of law and is therefore subject to *de novo* review. *See Rajsic v. Valley Forge Ins. Co.*, 574 B.R. 312, 316 (S.D. Fla. 2017).

The proper interpretation of the Florida Constitution is a matter of state law. Where the Florida Supreme Court has spoken on such a matter, federal courts must follow its rule. *See Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011)). Where, as here, the Florida Supreme Court has not spoken, federal courts follow the decisions of Florida's intermediate appellate courts "unless there is persuasive evidence that the highest state court would rule otherwise." *Bravo v. U.S.*, 577 F.3d 1324, 1326 (11th Cir. 2009) (internal quotation marks and citation omitted).

Only one decision emanating from Florida's intermediate appellate courts addresses the issue presently before this Court.[1] In *Davis v. Davis*, Florida's First District Court of Appeal squarely held "that the language limiting homesteads within municipalities to the residence of the owner or the owner's family does not apply to homesteads located outside municipalities." 864 So. 2d 458, 460 (Fla. Dist. Ct. App. 2003). Absent persuasive evidence that the Florida Supreme Court would hold otherwise, this Court must follow *Davis*. *See Bravo*, 577 F.3d at 1326; *Turner*, 879 F.3d at 1262.

---

[1] Appellant asserts that *First Leasing & Funding of Fla., Inc. v. Fiedler*, 591 So. 2d 1152 (Fla. Dist. Ct. App. 1992) and *Menard v. Univ. Radiation Oncology Assocs., LLP*, 976 So. 2d 69 (Fla. Dist. Ct. App. 2008) indirectly address the issue presently before this Court and therefore merit consideration. As Appellant acknowledges, however, neither *Fiedler* nor *Menard* involves property located outside a municipality. While Appellant correctly notes that neither opinion cites the location of the property as determinative, and that both contain citations to bankruptcy court orders in which the language limiting the homestead exemption to the residence of the owner or the owner's family at least appears to have been applied to property located outside a municipality, these points are insufficient reason to construe *Fiedler* and *Menard* as expressing any opinion on the issue presently before this Court. These authorities are therefore irrelevant here.

Before turning to the "persuasive evidence" put forth by Appellant, the Court summarizes the reasons underlying the holding in *Davis*. First, the *Davis* court gave article X, section 4 a reading consistent with decisional law under prior constitutions. As that court noted, "language similar to that found in article X, section 4 of the current constitution has appeared in Florida constitutions for well over a century." *Davis*, 864 So. 2d at 459. Both the 1868 and 1885 constitutions provided a homestead exemption

> to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, . . . The exemption herein provided for in a city or town shall not extend to more improvements or buildings than the residence and business house of the owner.

*Id.* When interpreting these prior constitutions, the Florida Supreme Court consistently concluded that the language limiting the exemption to "the residence and business house of the owner" did not apply to homesteads located outside municipalities. *See id.* at 460 (citing cases). Second, the *Davis* court gave article X, section 4 a reading consistent with its plain language. As revised in 1968, article X, section 4 combines what was once two separate sentences defining the extent of the homestead exemption into a single sentence. However, "a semicolon serves to grammatically separate the language expressing the extent of a homestead outside a municipality from the language limiting a homestead within a municipality to the residence of the owner or the owner's family." *Id.*

As "persuasive evidence" that the Florida Supreme Court would disagree with *Davis*, Appellant points to a bankruptcy court order in which the presiding judge wrote:

> The phrasing and punctuation of the present Article X, § 4 raises a question whether the limitation "to the residence of the owner or his family" applies to all homesteads or just a homestead in a municipality. Having lived through and participated in the deliberations of the Commission which drafted our present Constitution, I know there was no overt or announced intent to restrict the limitation to city homesteads.

4

*In re Shillinglaw*, 81 B.R. 138, 140 (Bankr. S.D. Fla. 1987). The Court does not find this comment on the deliberations surrounding the 1968 revision persuasive. That there was no overt or announced intent to continue the practice of the preceding 100 years is not necessarily remarkable. Far more significant is the absence of any suggestion in *Shillinglaw* that there was some overt or announced intent to break with that practice. Had there been such an intent, it could certainly have been made clear in the language and structure of the 1968 revision. Instead, while the language defining the extent of a homestead outside a municipality and the language limiting a homestead within a municipality to the residence of the owner or the owner's family were combined into a single sentence, these two provisions remain separated by a semicolon, suggesting that no change was intended.

Appellant further argues that, prior to *Davis*, most bankruptcy courts to consider this issue concluded that the language limiting the exemption to the residence of the owner or the owner's family applies to all homesteads whether located inside or outside municipalities. *See, e.g.*, *In re Nofsinger*, 221 B.R. 1018 (Bankr. S.D. Fla. 1998); *In re Pietrunti*, 207 B.R. 18 (Bankr. M.D. Fla. 1997); *In re Wierschem*, 152 B.R. 345 (Bankr. M.D. Fla. 1993); *In re Aliotta*, 68 B.R. 281 (Bankr. M.D. Fla. 1986). Since *Davis*, however, most have concluded otherwise. *See, e.g.*, *In re Tinseth*, No. 3:16-BK-1694-JAF, 2017 WL 875776 (Bankr. M.D. Fla. Mar. 3, 2017); *In re Oullette*, No. 08-3203-3F7, 2009 WL 1936896 (Bankr. M.D. Fla. Mar. 26, 2009); *In re Earnest*, No. 08-4408-3F7, 2009 LEXIS 1821 (Bankr. M.D. Fla. Mar. 26, 2009). *But see In re Radtke*, 344 B.R. 690 (Bankr. S.D. Fla. 2006) (declining to follow *Davis*). More importantly, the Florida Supreme Court is not bound by any bankruptcy court decision on this issue. *Cf. Sultenfuss v. Snow*, 35 F.3d 1494, 1504 (11th Cir. 1994) (Carnes, J., dissenting) ("Only a state supreme court can provide what we can be assured are 'correct' answers to state law questions, because a

state's highest court is the one true and final arbiter of state law. . . . When we write to a state law issue, we write in faint and disappearing ink: what we write does not bind any state court judge, and . . . once the state supreme court speaks the effect of anything we have written vanishes like the proverbial bat in daylight, only faster.").

Finally, Appellant argues that the Bankruptcy Court's interpretation would, contrary to general principles of statutory construction, produce an absurd or unreasonable result. *See, e.g.*, *In re Shillinglaw*, 81 B.R. 138, 140 (Bankr. S.D. Fla. 1987) ("I doubt that anyone could intend, for example, to permit a property owner on Key Biscayne (an unincorporated area) to shield a 1,000 room hotel from his creditors' claims merely because it is built on less than 160 acres owned by him and he lives in one of the rooms."); DE 6, Hrg. Tr. 20:3–20 ("I just note how extreme this might be. If you come to me with a high rise office building in the middle of nowhere . . . and it's 37 stories, and the debtor lives in a hut at the other end of the 159.9 acres, it's going to be his homestead, and you're going to be taking that to the 11th Circuit."). However, properties within a municipality have historically been treated differently from properties outside a municipality. *See Davis v. Davis*, 864 So. 2d 458, 460 (Fla. Dist. Ct. App. 2003) (citing cases). Interpreting article X, section 4 to allow an individual to claim property outside a municipality as his homestead, even though that property is not used exclusively as his residence, is consistent with a line of decisional law spanning more than a century and is supported by rational reasons. *See, e.g.*, *Armour & Co. v. Hulvey*, 74 So. 212, 214 (1917) ("It is evident . . . that the framers of the Constitution concluded that the advantages to the state to be derived from a liberal policy of homestead exemptions was greater than the benefits which might accrue from laws permitting a creditor to pursue his debtor to the very threshold of his home.").

The Court concludes by noting that Florida's homestead exemption laws must be liberally applied, *see In re Englander*, 95 F.3d 1028, 1031 (11th Cir. 1996), and that exceptions to the exemption should be strictly construed in favor of the claimant, *see In re Ehnle*, 124 B.R. 361, 363 (Bankr. M.D. Fla. 1991) (citing *Graham v. Azar*, 204 So. 2d 193, 195 (Fla. 1967)). With these principles in mind, the Court finds no error in the Bankruptcy Court's conclusion that the language in article X, section 4 limiting Florida's homestead exemption "to the residence of the owner or the owner's family" does not apply to properties located outside a municipality.

### III. CONCLUSION

For the reasons set forth above, it is hereby **ORDERED and ADJUDGED** as follows:

1. The Bankruptcy Court's Order Overruling Trustee's Objection to Homestead Exemption and Denying Application for Turnover is **AFFIRMED**.

2. Appellant's appeal is **DENIED**.

3. The Clerk of the Court is directed to **CLOSE THIS CASE**. All pending motions are denied as moot, all deadlines are terminated, and all hearings are cancelled.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this <u>18th</u> day of May, 2018.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record